**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANTIETAM INDUSTRIES, INC.,**
**WILLIAM WARFEL and JANICE**
**WARFEL,**

        **Petitioners,**

v.                                              **Case No:  6:12-cv-1250-Orl-36TBS**

**MORGAN KEEGAN & COMPANY,**
**INC.,**

        **Respondent.**

_____

**ORDER**

This cause comes before the Court on the Report and Recommendation of Magistrate Judge Thomas B. Smith (Doc. 42). In the Report and Recommendation, Magistrate Judge Smith recommends that Petitioners Antietam Industries, Inc., William Warfel, and Janice Warfel's (collectively, "Petitioners") Petition to Confirm Arbitration Award ("Petition") (Doc. 1) be granted in part and denied in part, and that Respondent Morgan Keegan & Company, Inc.'s ("Morgan Keegan") Motion to Vacate Arbitration Award ("Motion to Vacate") (Doc. 7) be granted in part and denied in part. *See* Doc. 42, p. 18. Magistrate Judge Smith also recommends that Petitioners' Motion for Sanctions Pursuant to *Hercules Steel* ("Motion for Sanctions") (Doc. 20, pp. 21–22) be granted, that Morgan Keegan's Motion to Strike Petitioners' Notice of Filing of Supplemental Authority (Doc. 35) be denied, and that Petitioners' Request for Judicial Notice (Doc. 39) be denied as moot. *See* Doc. 42, p. 18. Morgan Keegan filed Objections to the Report and Recommendation (Doc. 46), to which Petitioners responded (Doc. 48). As such, this matter is ripe for review.

I.     **BACKGROUND**

This action arises from Petitioners' maintenance of brokerage accounts with Morgan Keegan, a broker-dealer registered with the U.S. Securities and Exchange Commission and also a member of the Financial Industry Regulatory Authority ("FINRA"). Doc. 7-2, ¶¶ 3, 8. Morgan Keegan recommended that Petitioners invest in four closed-end funds serviced by Morgan Keegan and managed by an affiliate of Morgan Keegan, Morgan Asset Management, Inc. (the "RMK Funds"). *Id.* at ¶¶ 10–12. Following Petitioners' investment in the RMK Funds, the RMK Funds significantly declined in value during the 2007-2008 financial crisis and Petitioners sustained losses. *Id.* at ¶¶ 13, 36. Pursuant to the Morgan Keegan Client Agreements ("Client Agreements") requiring the parties to resolve any disputes by arbitration, Petitioners commenced an arbitration proceeding before FINRA in February 2011 (the "Warfel arbitration"), alleging that their losses were due to Morgan Keegan's misrepresentations and lack of disclosure regarding the risk and speculative nature of the RMK Funds. *Id.* at ¶¶ 13–36; Doc. 1-2, p. 1; Doc. 7-8, pp. 2, 4, 6. Specifically, Petitioners claimed that Morgan Keegan represented the RMK Funds as conservative bond funds, while in reality the RMK Funds were investing in risky and highly speculative structured products, and that Morgan Keegan continued to misrepresent and recommend the RMK Funds to Petitioners even after the RMK Funds had significantly declined in value in 2007. Doc. 7-2, ¶¶ 15, 27.

In July 2011, as part of the arbitrator selection process, Petitioners and Morgan Keegan had the opportunity to strike and/or rank 30 potential arbitrators from a list provided by FINRA in accordance with the FINRA Code of Arbitration Procedure for Customer Disputes ("FINRA Rules"). Doc. 43, p. 3, ll. 11–23. To assist with the selection process, the parties received an Arbitrator Disclosure Report ("ADR") for each potential arbitrator, including Christopher L.

Mass ("Arbitrator Mass"). *See* Doc. 7-13. ADRs are provided to arbitration parties by FINRA in order to help the parties make informed decisions during the arbitrator selection process and include information relating to the arbitrator's skills, employment, education, training, disclosure of conflicts, publicly available arbitration awards, and currently assigned arbitration cases.[1] The ADR for Arbitrator Mass, dated as of June 13, 2011, disclosed, among other things, that he was at that time assigned to Case No. 09-03931 involving Merrill Lynch Pierce Fenner & Smith Inc. (the "Coffey arbitration"), and that he had issued no publicly available awards. Doc. 7-13, p. 3. Petitioners and Morgan Keegan both elected to rank Arbitrator Mass rather than strike him. Doc. 43, p. 3, ll. 15–25, p. 4, ll. 1–3. Based on the parties' rankings, FINRA selected a panel of three arbitrators, which initially did not include Arbitrator Mass. Doc. 7, p. 3, n.2.

By letter dated June 19, 2012, FINRA informed the parties that one of the arbitrators selected for the Warfel arbitration had withdrawn from the panel, and that Arbitrator Mass would replace him. Doc. 7-11. Attached to the letter was a revised ADR for Arbitrator Mass ("Revised ADR"), dated as of June 18, 2012, which disclosed no publicly available awards and no longer listed the Coffey arbitration as one of his current arbitrations involving public customers. Doc. 7-12, p. 3. On June 25, 2012, Arbitrator Mass submitted an Oath of Arbitrator affirming that he had reviewed his Revised ADR, that he had nothing additional to disclose, and that his Revised ADR was "accurate, current, and up to date." Doc. 7-9, pp. 4–5.

The Warfel arbitration panel held a hearing on Petitioners' claims from July 16 through July 20, 2012, during which Petitioners and Morgan Keegan presented their arguments and evidence. Doc. 43, p. 6, ll. 4–8. On August 2, 2012, the panel issued a unanimous award finding Morgan Keegan liable for breach of fiduciary duty, negligence, negligent supervision, fraud, and

---

[1] *See* FINRA, Arbitrator Disclosure, *available at*
http://www.finra.org/ArbitrationAndMediation/Arbitrators/Responsibilites/Disclosures/.

breach of contract. Doc. 1-2, p. 4. The panel ordered Morgan Keegan to pay Petitioners compensatory damages in the amount of $100,000 with interest, punitive damages in the amount of $100,000 with interest, attorneys' fees "in an amount to be determined by a court of competent jurisdiction pursuant to Florida Statutes § 57.105," costs in the amount of $32,735, and certain other arbitration fees. *Id.* at 4–5.

On August 14, 2012, Petitioners filed the instant Petition pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, to confirm the award they received in the Warfel arbitration. Doc. 1. On August 31, 2012, Morgan Keegan filed the Motion to Vacate, arguing that the award should be vacated pursuant to 9 U.S.C. §§ 10(a)(2) and 10(a)(3), because Arbitrator Mass displayed "evident partiality" and "misbehavior" by failing to disclose a dissent he had written in the Coffey arbitration prior to serving on the Warfel panel. Doc. 7, p. 2. In the Coffey award, issued October 3, 2011, two of the three panelists found that the respondent broker-dealer was not liable to the claimants in advising them to hold on to their investments in Lehman Brothers bonds.[2] Doc. 7-14, pp. 3–5. Arbitrator Mass dissented, writing in relevant part:

> While [the investor] was clearly a very knowledgeable and engaged investor, his investment objective always remained conservative with the goal of preservation of capital. The Lehman notes satisfied this objective when originally purchased. They were highly rated and selling at nearly par value. However, on September 12, 2008 the price of the notes had dropped to 80, indicating significantly increased risk. [The investor] knew this and that is the difficulty of the case for him. However, it was still incumbent upon [the broker-dealer] to properly explain the risk [the investor] faced and to allow him to make an informed investment decision as to hold or sell the security. A broker is not relieved of this responsibility when managing accounts for sophisticated investors.

---

[2] The Coffey award was subsequently vacated by a California state court in *Coffey v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. BS135308, 2011 WL 4830095 (Cal. Super. Ct. Apr. 3, 2012), allegedly due to the potential bias of an arbitrator other than Arbitrator Mass, and is now on appeal. Doc. 7, p. 5, n.5.

*Id.* at 4–5. Morgan Keegan's Motion to Vacate argues that Arbitrator Mass' dissent in the Coffey award shows that he had prejudged a central issue in the Warfel arbitration—that Morgan Keegan owed Petitioners a duty to properly explain the risk of continuing to hold the RMK Funds even after Petitioners had sustained losses—and therefore the Warfel award should be vacated. Doc. 7, pp. 1–22.

Morgan Keegan's Motion to Vacate also contends that the Warfel award should be vacated in part pursuant to 9 U.S.C. § 10(a)(4) because the arbitrators "exceeded their powers" by determining that Petitioners were entitled to attorneys' fees in spite of the fact that the attorneys' fees issue had not been submitted to them.[3] *Id.* at pp. 22–25.

On September 19, 2012, in conjunction with their Response in Opposition to Morgan Keegan's Motion to Vacate, Petitioners filed the Motion for Sanctions, asserting that Morgan Keegan should be forced to pay Petitioners' attorneys' fees and costs incurred in opposing the Motion to Vacate, as well as an additional monetary sanction of $500,000, for attacking the Warfel award without any real legal basis. Doc. 20, pp. 21–22.

On November 30, 2012, Magistrate Judge Smith issued a Report and Recommendation on the Petition, Morgan Keegan's Motion to Vacate, and Petitioners' Motion for Sanctions. Doc. 42. In the Report and Recommendation, Magistrate Judge Smith recommends that: (1) the Warfel award be vacated with respect to Petitioners' entitlement to attorneys' fees because the arbitrators "exceeded their powers" by deciding an issue not submitted to them; (2) the Warfel award be confirmed in all other respects because Arbitrator Mass' failure to disclose his dissent in the Coffey arbitration did not amount to "evident partiality" or "misbehavior" under 9 U.S.C. §§ 10(a)(2) and 10(a)(3), respectively; (3) Morgan Keegan be judicially estopped from arguing

---

[3] In this Order, the Court uses the term "attorneys' fees" to refer to both attorneys' fees and costs incurred in bringing the action, unless otherwise indicated.

5

that Arbitrator Mass' dissent in the Coffey arbitration shows that he prejudged the claims in the Warfel arbitration, because such an argument is wholly inconsistent with positions Morgan Keegan has taken in previous cases; and (4) Petitioners' Motion for Sanctions be granted and Morgan Keegan be required to pay Petitioners' reasonable attorneys' fees and costs incurred in opposing Morgan Keegan's Motion to Vacate because Morgan Keegan attacked the Warfel award without any real legal basis.[4] *Id.* at pp. 16, 18.

## II. STANDARD OF REVIEW

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Bd. of Educ. of State of Georgia,* 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

## III. DISCUSSION

Morgan Keegan asserts the following objections to Magistrate Judge Smith's Report and Recommendation: (1) the entire Warfel award should be vacated because Arbitrator Mass' failure to disclose his dissent in the Coffey arbitration constituted "evident partiality" and "misbehavior" under 9 U.S.C. §§ 10(a)(2) and 10(a)(3), respectively; (2) judicial estoppel should not be applied in this case; and (3) sanctions should not be imposed against Morgan Keegan

---

[4] Magistrate Judge Smith also recommends that Morgan Keegan's Motion to Strike Petitioners' Notice of Filing of Supplemental Authority (Doc. 35) be denied and that Petitioners' Request for Judicial Notice (Doc. 39) be denied as moot. Doc. 42, p. 18.

6

because it had a real legal basis for attacking the award. Doc. 46. Neither Petitioners nor Morgan Keegan have objected to the Magistrate Judge's recommendation that the Warfel award be vacated with respect to Petitioners' entitlement to attorneys' fees.

### A. Vacatur under 9 U.S.C. § 10

Pursuant to the FAA, a party may apply to a district court for an order confirming an arbitration award, and "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed" in the statute. 9 U.S.C. § 9. Following the Supreme Court's decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), the Eleventh Circuit has held that the *only* grounds for vacatur of an arbitration award are the four narrow statutory bases set forth in 9 U.S.C. §§ 10(a)(1)–(4). *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010). The four statutory bases under which a court may vacate an award are:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Morgan Keegan relies on §§ 10(a)(2)–(4) in seeking to vacate the Warfel award. "There is a presumption under the FAA that arbitration awards will be confirmed, and 'federal courts should defer to an arbitrator's decision whenever possible.'" *Frazier*, 604 F.3d at 1321 (quoting *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006)). "The party challenging the arbitration award bears the burden of asserting sufficient

7

grounds to vacate the award." *Aldred v. Avis Rent-A-Car*, 247 F. App'x 167, 169 (11th Cir. 2007) (internal quotations omitted).

                1.      Arbitrator Mass Did Not Display "Evident Partiality" Under 9 U.S.C. § 10(a)(2)

Morgan Keegan argues that the Warfel award should be vacated due to "evident partiality" under 9 U.S.C. § 10(a)(2) because Arbitrator Mass' failure to disclose his Coffey dissent suggests that he had already prejudged the central issues in the Warfel arbitration. Doc. 7, p. 17. " '[A]n arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.' " *World Bus. Paradise, Inc. v. Suntrust Bank*, 403 F. App'x 468, 470 (11th Cir. 2010) (quoting *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.,* 304 F.3d 1331, 1339 (11th Cir. 2002)). Morgan Keegan does not argue that an actual conflict exists. *See* Doc. 7, p. 16. Therefore, Morgan Keegan must show that Arbitrator Mass failed "to disclose those facts that create a reasonable impression of partiality, or put another way, information which would lead a reasonable person to believe that a potential conflict exists. The partiality alleged must be direct, definite and capable of demonstration rather than remote, uncertain and speculative." *University Commons*, 304 F.3d at 1339 (internal citations and quotations omitted).

Importantly, the cases in the Eleventh Circuit—and, to the Court's knowledge, elsewhere—addressing "evident impartiality" due to an arbitrator's non-disclosure have involved undisclosed *relationships* that the arbitrator had with a party or a party's counsel, family, or others. *See, e.g.*, *id.* at 1334–35 (arbitrator failed to disclose his business relationship with a representative of one of the parties and with counsel to both parties); *Gianelli Money Purchase Plan & Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309, 1310 (11th Cir. 1998) (arbitrator

8

failed to disclose that he had served as counsel to the corporate representative of one of the parties to the arbitration); *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1199 (11th Cir. 1982) (arbitrator failed to disclose that his family-owned insurance company was in adversarial litigation with one of the parties to the arbitration).

Indeed, the Second Circuit recently stated that "the decisions under § 10(a)(2)'s 'evident partiality' provision have addresse[d] non-disclosure only of facts bearing on partiality—namely, a *relationship* with a party, a lawyer, or another arbitrator." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (quotations omitted) (emphasis added). In fact, in *STMicroelectronics*, the court noted that the appellant, who was seeking vacatur based on an arbitrator's alleged predisposition on an issue of law, had abandoned seeking vacatur under § 10(a)(2) because vacatur under that subsection of the statute requires non-disclosure of relationships. *Id*.

Here, Morgan Keegan has not alleged that Arbitrator Mass had a past or existing relationship with any party, arbitrator, counsel, family member, or witness, or that he had any other financial or personal interest in the outcome of the Warfel arbitration. Rather, Morgan Keegan's sole basis for the § 10(a)(2) challenge is that Arbitrator Mass' dissent in the Coffey arbitration shows that he was predisposed on an issue of law, and that he therefore prejudged the Warfel arbitration. Morgan Keegan has failed to cite a single case, nor is the Court aware of any, in which a court has found evident partiality due to an arbitrator's predisposition on a point of law, and the Court will not create such a basis for vacatur under § 10(a)(2) now. Arbitration is a preferred method of dispute resolution, in part, because arbitrators are often experienced in the industry, even though they may be "precommitted to a particular substantive position." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir. 1983) (Posner, J.); *accord University*

*Commons*, 304 F.3d at 1340 ("an arbitrator's experience in an industry, far from requiring a finding of partiality, is one of the factors that can make arbitration a superior means of resolving disputes").

Even if predisposition on an issue of law was a viable ground for vacatur, the Court is not convinced that Arbitrator Mass was predisposed or that he prejudged the Warfel arbitration. The Coffey arbitration was a wholly unrelated arbitration with its own set of facts. Moreover, Arbitrator Mass' dissent in the Coffey award merely stated that, *in those circumstances*, the broker had failed to properly explain the risk that the investor faced in continuing to hold his investments.[5] *See* Doc. 7-14, p. 4. The mere fact that Arbitrator Mass believed that the broker in the Coffey arbitration had improperly explained the risk of the Lehman bonds does not mean that he was predisposed to find that Morgan Keegan was liable in the Warfel arbitration, or that he had prejudged the case. To the contrary, in his Coffey dissent, Arbitrator Mass declared that, as a general rule, "[a] broker is not legally liable for making an incorrect investment recommendation." *Id*. The partiality alleged by Morgan Keegan is remote, uncertain, and speculative rather than direct and definite. In sum, Morgan Keegan has not demonstrated that Arbitrator Mass failed to disclose information which would lead a reasonable person to believe that a potential conflict exists. Accordingly, the Court rejects Morgan Keegan's argument that the Warfel award should be vacated for "evident partiality" under § 10(a)(2).

   2. *Arbitrator Mass Was Not Guilty of "Misbehavior" Under 9 U.S.C. § 10(a)(3)*

Morgan Keegan next argues that Arbitrator Mass' failure to disclose his dissent in the Coffey arbitration was "misbehavior" which prejudiced Morgan Keegan, entitling it to vacatur

---

[5] The notion that a broker should properly explain the risk of an investment is certainly not a novel one, as the Eleventh Circuit has recognized that a broker has a fiduciary duty to inform the investor of the risks involved in purchasing or selling securities. *See, e.g.*, *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987).

under 9 U.S.C. § 10(a)(3). Doc. 7, pp. 10–16. Morgan Keegan asserts that it was prejudiced because, had it been informed of the Coffey dissent, it would have sought Arbitrator Mass' removal or recusal under FINRA Rules, tailored its presentation of evidence and argument during the arbitration to address Arbitrator Mass' dissent in the Coffey arbitration, or accepted that Arbitrator Mass had prejudged the case and settled with Petitioners. *Id.* at p. 15.

Vacatur is permitted under § 10(a)(3) "[w]here the arbitrators are guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of *any other misbehavior by which the rights of any party have been prejudiced*[.]" 9 U.S.C. § 10(a)(3) (emphasis added). Decisions in the Eleventh Circuit addressing vacatur under § 10(a)(3) generally involve the first two prongs—misconduct in refusing to postpone a hearing or in refusing to hear evidence. *See, e.g.*, *Robbins v. Day*, 954 F.2d 679, 684 (11th Cir. 1992); *Spungin v. GenSpring Family Offices, LLC*, No. 11–mc–81287, 2012 WL 3236506, at *4 (S.D. Fla. May 25, 2012); *Marshall & Co., Inc. v. Duke*, 941 F. Supp. 1207, 1211 (N.D. Ga. 1995). Morgan Keegan, however, seeks vacatur under the third "catch-all" prong. Doc. 7, p. 10.

The Second Circuit recently stated in *STMicroelectronics* that it was unaware of *any* cases that have addressed claims of insufficient disclosure under the "other misbehavior" prong. 648 F.3d at 74; *see also Stone v. Bear, Stearns & Co., Inc.*, 872 F. Supp. 2d 435, 449 (E.D. Pa. 2012) (noting the "dearth of case law on failure-to-disclose-type 'misbehavior' "). In *STMicroelectronics*, the Second Circuit considered a broker-dealer's motion to vacate a unanimous FINRA arbitration award under the "other misbehavior" prong of § 10(a)(3). 648 F.3d at 74. The broker-dealer alleged that an arbitrator's ADR did not properly disclose, among other things, that "he had served as a claimant-side expert witness on an issue very similar to the

11

one that would determine the arbitration." *Id.* at 73–74. The court did not reach the "hotly contested" questions of whether "the 'other misbehavior' clause in 9 U.S.C. § 10(a)(3) extends to insufficient disclosure [and whether] violation of the FINRA rules necessarily constitutes such 'other misbehavior.'" *Id.* at 76. Instead, the court held that an arbitrator's failure to disclose his predisposition on an issue of law could not form the basis for vacatur:

> [T]he major premise of [the broker's] attack on [the arbitrator's] non-disclosure of his prior testimony fails. There is no contention here that [the arbitrator] had any prior knowledge of, or misconception about, the facts of this case. [The broker's] argument, rather, is that his testimony suggests he had pre-existing views about potentially relevant propositions of law. However, "[a] judge's lack of predisposition regarding the relevant legal issues in a case has never been thought a necessary component of equal justice, and with good reason. For one thing, it is virtually impossible to find a judge who does not have preconceptions about the law." *Repub. Party of Minn. v. White*, 536 U.S. 765, 777, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). This is all the more true for arbitrators, "[t]he most sought-after" of whom "are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose." *Int'l Produce, Inc. v. A/S Rosshavet*, 638 F.2d 548, 552 (2d Cir. 1981). . . . A party might like to know . . . information [regarding an arbitrator's predisposition on an issue of law] when shopping for arbitrators, but its absence cannot form a ground for vacating an arbitral award.

*STMicroelectronics*, 648 F.3d at 77.

This Court agrees with the Second Circuit's reasoning and holding in *STMicroelectronics* and finds it instructive. Arbitrator Mass' statement in his Coffey dissent that the broker had failed in its duty to properly explain the risk that the investor faced in continuing to hold his investments should not serve as a basis for vacatur under § 10(a)(3), even if such information was not disclosed on his ADR. Holding otherwise would be inconsistent with the fundamental purposes and nature of arbitration.

Regardless, even if failure to disclose a predisposition of law was a proper basis for vacatur under § 10(a)(3), the Court has already determined that Morgan Keegan failed to show

Arbitrator Mass was predisposed here or that he prejudged the Warfel arbitration. *See supra* Part III.A.1.

Morgan Keegan relies heavily on *Citigroup Global Markets, Inc. v. Berghorst*, No. 11-80250-CIV, 2012 WL 5989628 (S.D. Fla. Jan. 20, 2012), for the proposition that an arbitrator's failure to disclose can serve as the basis for vacatur under § 10(a)(3), arguing that it is directly on point. The Court disagrees with Morgan Keegan's assertion and finds *Berghorst* to be distinguishable. In *Berghorst*, decided after *STMicroelectronics*, a broker-dealer challenged a FINRA arbitration award issued by a 2-1 vote. *Id.* at *3. The broker-dealer alleged that an arbitrator had failed to update his responses to an Arbitrator Disclosure Checklist to reflect his commencement of a concurrent arbitration proceeding against his former employer—Wells Fargo, a broker-dealer—for trading losses in his individual retirement account, retaliatory termination, and defamation, as well as a foreclosure proceeding brought by Wells Fargo against him. *Id.* at *2. The court observed that "[a]n arbitrator currently embroiled in battles with a large national bank would be perceived by objective observers as likely to be partial to plaintiffs embroiled in their own dispute with a large national bank. That is especially true here, given the highly personal nature of [the arbitrator's] disputes with Wells Fargo. . . ."[6] *Id.* at *4. Therefore, the court held that the arbitrator's lack of disclosure was "misbehavior" under § 10(a)(3) and vacated the arbitration award. *Id.* at *5.

Here, however, Arbitrator Mass' non-disclosure related to his alleged predisposition on an issue of law, reflected in his dissent in the Coffey arbitration. This non-disclosure pales in comparison to the non-disclosure in *Berghorst*, which related to an arbitrator's failure to disclose

---

[6] Although the quoted portion of *Berghorst* related to the court's finding of "evident partiality" under § 10(a)(2), it was clearly relevant to the court's finding of "misbehavior" under § 10(a)(3). *See id.* at *5.

"highly personal…battles [he] was fighting [against another broker-dealer] during the very time he was serving as an arbitrator. . . ." *Id.* at *4; *see Stone*, 872 F. Supp. 2d at 449, n.9 (distinguishing *Berghorst*, stating that an arbitrator's "alleged non-disclosure pale[d] in comparison to the arbitrator's in *Berghorst*" due to the *Berghorst* arbitrator's failure to disclose "that he had been waging a heated legal battle against his former employer, Wells Fargo/Wachovia (a registered broker-dealer), for wrongful termination, among other things"). In addition, the arbitrator at issue in *Berghorst* provided the decisive vote in a 2-1 decision, whereas Petitioners here would have won regardless of Arbitrator Mass' vote, as the decision was unanimous. *See Stone*, 872 F. Supp. 2d at 449, n.9 (also distinguishing *Berghorst* on this basis). In any event, the Court has explained that Arbitrator Mass' failure to disclose his dissent in the Coffey arbitration is not a sufficient basis for vacatur in this case. Accordingly, *Berghorst* is inapposite, and the Court—like the Second Circuit in *STMicroelectronics*—need not decide as a general matter whether an arbitrator's non-disclosure can *ever* serve as a basis for vacatur under the "other misbehavior" clause of § 10(a)(3). *See STMicroelectronics*, 648 F.3d at 76.

Also like the Second Circuit in *STMicroelectronics*, this Court need not answer the question of whether a violation of FINRA Rules necessarily constitutes such "other misbehavior," because the Court is not convinced that Arbitrator Mass violated any FINRA Rule. *See id*. The only FINRA Rules arguably applicable are FINRA Rules 12405(a) and (b):

> (a) Before appointing arbitrators to a panel, the Director [of FINRA Dispute Resolution] will notify the arbitrators of the nature of the dispute and the identity of the parties. Each potential arbitrator must make a reasonable effort to learn of, and must disclose to the Director, any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding, including:
>
> (1) Any direct or indirect financial or personal interest in the outcome of the arbitration;

14

> (2) Any existing or past financial, business, professional, family, social, or other relationships or circumstances with any party, any party's representative, or anyone who the arbitrator is told may be a witness in the proceeding, that are likely to affect impartiality or might reasonably create an appearance of partiality or bias;
>
> (3) Any such relationship or circumstances involving members of the arbitrator's family or the arbitrator's current employers, partners, or business associates; and
>
> (4) Any existing or past service as a mediator for any of the parties in the case for which the arbitrator has been selected.
>
> (b) The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination described in paragraph (a) is a continuing duty that requires an arbitrator who accepts appointment to an arbitration proceeding to disclose, at any stage of the proceeding, any such interests, relationships, or circumstances that arise, or are recalled or discovered.

Paragraphs (1) through (4) of FINRA Rule 12405(a) are not implicated by Arbitrator Mass' dissent in the Coffey arbitration. Consistent with the rest of this Order, the Court also finds that his dissent was not a "circumstance[ ] which might preclude [him] from rendering an objective and impartial determination in the proceeding." Therefore, there was no violation of FINRA Rule 12405(a) and, accordingly, no violation of FINRA Rule 12405(b).

Indeed, Morgan Keegan does not expressly argue that Arbitrator Mass has violated any FINRA Rule. Rather, Morgan Keegan's argument focuses on the fact that Arbitrator Mass submitted his Oath of Arbitrator affirming that his Revised ADR required no further disclosure, when in fact it failed to disclose that he participated in a publicly available award in the Coffey arbitration. Doc. 46, pp. 4–6. The Court does not view this as a sufficient basis for vacating the award in light of Arbitrator Mass' general compliance with FINRA Rules. Moreover, Arbitrator Mass' participation in the Coffey arbitration *was* disclosed to Morgan Keegan in his initial ADR. Doc. 7-13, p. 3. Morgan Keegan could have simply accessed FINRA's Arbitration Awards Online database, as the Court has done, typed in the case number, and monitored whether an

award had been issued in the Coffey arbitration. *See* FINRA Arbitration Awards Online, *available at* http://finraawardsonline.finra.org/. Thus, Arbitrator Mass' omission of the Coffey award in his Revised ADR will not serve as a basis for vacatur here.

In sum, Morgan Keegan has not carried its heavy burden of showing that the Warfel award should be vacated for "misbehavior" under § 10(a)(3), and therefore this objection to the Magistrate Judge's Report and Recommendation is rejected.

       3.   *The Arbitrators "Exceeded Their Powers" Under 9 U.S.C. § 10(a)(4)*

In the Report and Recommendation, Magistrate Judge Smith recommends that the portion of the Warfel award finding that Petitioners are entitled to attorneys' fees be vacated because the arbitrators "exceeded their powers" under 9 U.S.C. § 10(a)(4) by deciding an issue not submitted to them. Doc. 42, pp. 10–13. Neither Petitioners nor Morgan Keegan have objected to this recommendation and, in any event, the Court agrees.

"[T]he law is well-established that an arbitrator can bind the parties only on issues that they have agreed to submit to him." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1194 (11th Cir. 1995). When arbitrators decide an attorneys' fees issue not submitted to them, they have exceeded their powers and vacatur of that portion of the award is proper under § 10(a)(4). *Id.* at 1195. Here, the Client Agreements, which contained Tennessee choice-of-law clauses, stated that any expenses, including attorneys' fees, incurred by Morgan Keegan in defense of an action brought by Petitioners against Morgan Keegan would be borne solely by Petitioners should Morgan Keegan prevail. Doc. 7-8, pp. 3, 5, 7. Seeking to take advantage of a Florida statute that permits a court to convert such a unilateral attorneys' fees provision into a reciprocal obligation, Fla. Stat. § 57.105(7), Petitioners asked the Warfel arbitration panel to grant them attorneys' fees in their Amended Statement of Claim. Doc. 7-2, ¶ 35. However, Morgan Keegan expressly reserved its right to seek attorneys' fees from a court pursuant to the Client Agreements in its

16

Answer to Petitioners' Statement of Claim ("Answer"), maintaining that the attorneys' fees issue was not before the arbitration panel. Doc. 7-6, pp. 27–28. Therefore, the arbitrators exceeded their powers by finding that Petitioners were entitled to attorneys' fees.

To the extent that Morgan Keegan's Answer might be construed as waiving this right due to a statement in its Conclusion that the arbitration panel should grant attorneys' fees to Morgan Keegan,[7] the Court agrees that any such waiver was subsequently withdrawn during closing arguments before the panel, where again Morgan Keegan stated that the attorneys' fees issue was not before the panel. Doc. 7-6, p. 28; Doc. 7-15, pp. 192–94; *see Deitchman v. Bear Stearns Sec. Corp.*, No. 07-60465-CIV, 2007 WL 4592238, at *6–7 (S.D. Fla. Dec. 28, 2007) (vacating arbitration panel's award of attorneys' fees where broker initially put the issue of attorneys' fees before the panel but later withdrew that issue from consideration). Accordingly, the Court agrees with Magistrate Judge Smith's recommendation that the portion of the Warfel award granting attorneys' fees should be vacated under § 10(a)(4) and that the issues of entitlement to, and amount of, attorneys' fees should be litigated and decided in this Court.

### B.   Judicial Estoppel

Magistrate Judge Smith further recommends that Morgan Keegan be judicially estopped from arguing that Arbitrator Mass was predisposed in favor of Petitioners, because Morgan Keegan had taken wholly inconsistent positions when opposing challenges to other arbitrators in previous arbitrations. Doc. 42, pp. 13–16. Under the doctrine of judicial estoppel, "a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Judicial estoppel is an equitable concept intended to prevent

---

[7] Morgan Keegan claims that this statement was a scrivener's error. Doc. 7, p. 23, n.19. Aside from this one statement, Morgan Keegan consistently argued that the attorneys' fees issue was not before the arbitration panel. *See* Doc. 7-6, pp. 27–28; Doc. 7-15, pp. 192–94; Doc. 43, pp. 35, 61–65, 85–86.

the perversion of the judicial process." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). A court may invoke judicial estoppel at its discretion. *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Because the Court has determined that the Warfel award will be confirmed—except with respect to Petitioners' entitlement to attorneys' fees—it need not invoke judicial estoppel in this case. Accordingly, the Court declines to adopt the Magistrate Judge's recommendation on this point.

### C. Petitioners' Motion for Sanctions

Finally, the Magistrate Judge recommends that the Court grant Petitioners' Motion for Sanctions, proposing that Petitioners be awarded their reasonable attorneys' fees and costs incurred in opposing Morgan Keegan's Motion to Vacate. Doc. 42, pp. 17–18. The Magistrate Judge stated that sanctions were appropriate under the Eleventh Circuit's decision in *Hercules Steel* because there was no real legal basis for Morgan Keegan's Motion to Vacate. *Id.* at 17.

In *Hercules Steel*, the Eleventh Circuit recognized that a court may impose sanctions "if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so." 441 F.3d at 913. Here, however, Morgan Keegan clearly had at least one real legal basis for attacking the award, as the Court has concluded that the arbitration panel's award of attorneys' fees to Petitioners should be vacated under 9 U.S.C. § 10(a)(4) because the arbitrators exceeded their powers. Therefore, the Court will not impose sanctions in this case and declines to adopt the Magistrate Judge's recommendation on this point. *See First Auto. Serv. Corp., N.M. v. First Colonial Ins. Co.*, No. 3:07-cv-682, 2010 WL 2431889, *6 (M.D. Fla. June 16, 2010) (declining to impose sanctions where the arbitration panel's decision to award attorneys' fees raised colorable questions of law, even where the challenge to that portion of the award was not ultimately meritorious).

**IV.    CONCLUSION**

After careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the court file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted in part and rejected in part.

Accordingly, it is hereby **ORDERED** as follows:

1) The Report and Recommendation of the Magistrate Judge (Doc. 42) is **adopted in part and rejected in part as follows:**

    a. Petitioners' Petition to Confirm Arbitration Award (Doc. 1) is **GRANTED in part** and **DENIED in part**:

        i. The Petition is **DENIED** to the extent it seeks to confirm the award of attorneys' fees and costs.

        ii. The Petition is **GRANTED** in all other respects.

    b. Morgan Keegan's Motion to Vacate (Doc. 7) is **GRANTED in part** and **DENIED in part**:

        i. The Motion to Vacate is **GRANTED** to the extent it seeks to vacate the award of attorneys' fees and costs.

        ii. The Motion to Vacate is **DENIED** in all other respects.

    c. Petitioners' Motion for Sanctions (Doc. 20) is **DENIED**.

    d. Morgan Keegan's Motion to Strike Petitioners' Notice of Filing of Supplemental Authority (Doc. 35) is **DENIED as moot**.

    e. Petitioners' Request for Judicial Notice (Doc. 39) is **DENIED as moot**.

2) Morgan Keegan's Request for Oral Argument (Doc. 47) is **DENIED as moot**.

3) Within **TWENTY-ONE (21) DAYS** from the date of this Order, Petitioners shall submit a motion for attorneys' fees and costs incurred pursuant to the claims made in the underlying arbitration and in defending the motion to vacate in this Court. Along with that motion, Petitioners shall submit a proposed judgment that includes both the arbitration award component and the attorneys' fees component.

**DONE** and **ORDERED** in Orlando, Florida on March 25, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
United States Magistrate Judge Thomas B. Smith